UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD SHARIFI,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHNEIDER NATIONAL TRUCKING COMPANY, et al.,<br><br>    Defendant. | No. 2:11-cv-01517-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

On April 11, 2011, Mohammad Sharifi ("Plaintiff") brought this action against Schneider National Trucking Company, Schneider National Carriers Inc., Schneider National Bulk Carriers, Inc. (collectively referred to as "Defendants") alleging four claims: (1) physical discrimination in violation of California's Government Code § 12940; (2) failure to give a reasonable accommodation in violation of California Government Code § 12940(m); (3) failure to engage in the interactive process with Plaintiff in violation of California Government Code § 12940(n); and (4) tortious termination in violation of public policy.[1]

///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

On December 26, 2012, Defendants filed a Motion for Summary Judgment arguing that the Court should grant Defendants' Motion on all Plaintiff's claims because "put simply, Plaintiff's case is no more than a series of false allegations concocted in an attempt to get monies." (ECF No. 14-1 at 7.) The next day, Plaintiff filed a Motion for Summary Judgment arguing that Defendants admittedly terminated Plaintiff because of Plaintiff's neck condition in violation of the California Fair Employment Housing Act ("FEHA"), which Plaintiff argues makes judgment as a matter of law proper as to Plaintiff's FEHA physical discrimination claim.[2] (ECF No. 15-2 at 1.) Both parties opposed the other party's Motion for Summary Judgment. (ECF Nos. 19, 20, 21, 22, and 24.) For the reasons described below, both the Defendants' and Plaintiff's Motion for Summary Judgment are DENIED.

## BACKGROUND

### A. Defendants' Version of the Facts[3]

Prior to Plaintiff's employment with Defendants, on January 17, 2007, while working as a truck driver for Pacific Motor Company, Plaintiff injured his back, neck, and shoulder on the job. Plaintiff ceased working immediately. On March 15, 2007, Plaintiff attended a neurosurgeon consult and the doctor concluded that Plaintiff was unable to drive a truck. Plaintiff was released back to full duty on November 12, 2007. On November 13, 2007, Plaintiff damaged his truck by backing into an object and Pacific Motor Truck Company terminated him for his seventh accident. The next day, Plaintiff asked that his doctor put him back on restricted duty.

---

[2] California's Government Code § 12940 is commonly referred to as California's Fair Employment and Housing Act. All references to FEHA refer to California's Government Code § 12940.

[3] These facts are taken, sometimes verbatim, from Defendants' Motion for Summary Judgment. (ECF No. 14-1.)

On December 14, 2007, Plaintiff was deemed permanent and stationary, meaning that he had achieved maximum recovery from his injury while employed at Pacific Motor Trucking Company.  On January 3, 2008, Plaintiff sent Pacific Motor Trucking Company a resignation letter which expressed his intent to stay home and recover from his injury.[4]

     Plaintiff remained unemployed until he applied for employment as a truck driver with Defendants on January 12, 2010.  In his application, Plaintiff wrote that he had been "laid off" from Pacific Motor Trucking Company.  As part of the new hire process with Defendants, on January 15, 2010, Defendants' occupational health department called Plaintiff for a medical interview, mandated by Department of Transportation ("DOT") regulations, to ensure Plaintiff was physically qualified to drive a truck.  During that interview, Plaintiff provided that he underwent therapy through a previous Workers' Compensation claim, but got back to work about one month later, and had no restrictions, pain, or problems since.  On January 22, 2010, Plaintiff underwent a DOT-mandated physical medical examination through U.S. Healthworks.  In connection with that examination, Plaintiff filled out the Medical Examination Report for Commercial Driver Fitness Determination.  In that report, Plaintiff misrepresented the nature of his prior injury and failed to check a box that he had a spine or other musculoskeletal injury in the last five years.  In the same report, Plaintiff explained that he "had an injury at work two years ago" but was "totally good now."  Based on Plaintiff's false representations, Defendants hired Plaintiff as a truck driver on January 25, 2010.  On February 5, 2010, Plaintiff reported to his Primary Treating Physician ("PTP") that he was experiencing pain in his neck, both arms and his shoulders.  Although, during the same visit, Plaintiff's PTP lifted his previous work restrictions and allowed Plaintiff to drive a truck.

///

///

---

[4] The Court acknowledges that it is unclear if Pacific Motor Truck Company fired Plaintiff or if Plaintiff quit.  The Court recounts the information Defendants provided.  This is another among several facts that are unclear.

On February 15, 2010, while picking up a load for Defendants' customer, Plaintiff fractured his finger. Plaintiff took a painkiller for his pain at 4:00 a.m. and could not work the following day driving a truck, but Plaintiff agreed to come in to work in the warehouse. Meanwhile, Defendants' workers' compensation department called Plaintiff to inquire how his finger was injured. During Plaintiff's conversation with Defendants' workers' compensation department, Defendants asked Plaintiff if he had previous injuries. At that time, Plaintiff disclosed the extent of his previous spinal injury to Defendants. Falsifying any company records is grounds for immediate termination, and Defendants terminated Plaintiff for falsification of his application and company medical records.

B.   Plaintiff's Version of the Facts[5]

In 2007, Plaintiff injured his neck while working for a company called Pacific Motor Trucking. During the next few years, Plaintiff's neck improved and allowed him to return to the workplace. In 2010, Defendants hired Plaintiff as a truck driver. As part of the hiring process, Defendants conducted a medical interview during which Defendants asked Plaintiff if he ever had any work restrictions, light duty, disability ratings, or any type of injury that caused him to lose time from work. Defendants' examiner wrote that Plaintiff answered: "bulging disc in neck 1/07 did go through therapy with old company under WC [worker's compensation] he got back to work 1 month later. He has no restrictions pain or problems since then." In addition, Defendant required Plaintiff to undergo a physical medical examination during which Plaintiff again revealed that he had suffered a previous work related injury. Soon after Plaintiff started working for Defendants, he injured his finger.

///

---

[5] Plaintiff's version of the facts are taken, sometimes verbatim, from Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment or in the Alternative Summary Adjudication. (ECF No. 20.)

4

Although Defendants acknowledged Plaintiff's continuing ability to work a few days after sustaining the finger injury, a collective decision to terminate Plaintiff was made by Defendants' employees Brock Vann ("Vann"), Daniel Eytchison ("Eytchison") and Derek Westbrook ("Westbrook"). Vann, Eytchison and Westbrook admitted that Plaintiff was not terminated because of any inability to perform his truck driving duties or any job performance issues. Rather, they informed Plaintiff that he was terminated because of his prior work related neck condition. According to Plaintiff's immediate supervisor, Gregory Rupinski ("Rupinski"), "there would be no other reason to fire him." Consequently, Plaintiff filed an administrative complaint with the California Department of Fair Employment Housing and then this civil complaint against Defendants.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp., 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). Stated another way,

> before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.

Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A.   Plaintiff's Physical Disability Discrimination Claim

The FEHA makes it unlawful for an employer "because of the . . . physical disability . . . of any person . . . to discriminate against the person . . . in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). In evaluating a claim of disability discrimination, California courts apply the McDonnell Douglas three-part burden shifting approach. Guz v. Bechtel Nat'l Inc. 24 Cal. 4th 317, 354 (2000). Plaintiff must first establish a prima facie case of discrimination. Id. The elements of prima facie case of disability discrimination under FEHA are that a plaintiff: (1) suffers from a disability; (2) is otherwise qualified to perform his job; and (3) was subjected to adverse employment action because of the disability. McKenna v. Permanente Medical Group, Inc. 894 F. Supp. 2d 1258, 1278 (E.D. Cal. 2012). If Plaintiff is able to establish a prima facie case, the burden shifts to Defendants to articulate a "legitimate, nondiscriminatory reason" for the challenged action. Guz, 24 Cal. 4th at 354. Once Defendants demonstrate a non-discriminatory reason, the "presumption of discrimination disappears" and Plaintiff must then show, by specific and substantial evidence, that Defendants' proffered reason is pretext and the true motive was intentional discrimination. Id.

Defendants argue that Plaintiff cannot establish the required prima facie case; specifically Defendants contend that Plaintiff cannot prove that he was a qualified individual with a disability and that he cannot demonstrate a causal connection between his termination and any alleged disability. (ECF No. 14-1 at 15.) Defendants argue that Plaintiff was not qualified to perform his job as a truck driver because DOT requires medical certification at all times, and Plaintiff's misrepresentations to the medical examiner made Plaintiff's DOT certification invalid and consequently made him ineligible to be truck driver. (Id.) Defendants argue there is no causal connection between Plaintiff's disability and his termination because they fired Plaintiff for falsifying medical records, not his alleged disability. Defendants argue that even if Plaintiff were to prove his prima facie case, Defendants fired Plaintiff for application falsification, which is a legitimate, non-discriminatory reason and Plaintiff is unable prove pretext. (Id. at 17.)

In contrast, Plaintiffs argue that their evidence establishes the prima facie case. Plaintiff alleges that Defendants, specifically Defendants' employees Vann and Eytchison, regarded Plaintiff as disabled. (ECF No. 15-2 at 3.) Plaintiff alleges that his neck condition is a disability under FEHA because, although it did not limit his ability to drive a truck, it limited Plaintiff's ability to perform other jobs. (Id. at 4.) Defendants' employee Vann admitted Plaintiff was physically able to perform his job as a truck driver. Plaintiff's direct supervisor, Rupinski, stated "there would be no other reason to fire him" besides his previous neck injury. (Id. at 5.) Thus, Plaintiff argues he is entitled to summary judgment as to his physical discrimination claim.

Despite both parties' arguments, there are several questions of material fact that remain as to Plaintiff's physical discrimination claim. Based on the evidence provided, it is unclear whether Plaintiff was qualified to do his job. Defendants argue his misrepresentations on his application and during the DOT medical exam automatically make him unqualified to perform his job. Based on the evidence provided, it is unclear if Plaintiff lied.

///

1   Rachelle Paulson completed Exhibit 6, the medical report that states Plaintiff had a
2   bulging disk which required therapy under worker's compensation but that he got back to
3   work one month later.[6] (ECF No. 14-8 at 68.)  Thus, it is unclear whether Plaintiff lied or
4   minimized his medical history or if the examiner misheard or misreported Plaintiff's
5   answer.  This report is complicated further by Plaintiff's affirmative answer that he saw a
6   doctor for treatment or testing for a neck problem.  (Id.)  Exhibit 8 makes Plaintiff's
7   medical history even more unclear.  (ECF No. 14-8 at 73.)  In Exhibit 8, Plaintiff wrote "I
8   had an injury at work two years ago; however, I am today good now."  Plaintiff's
9   statement is not untrue.  A question of fact remains as to whether Plaintiff lied or
10  misrepresented his medical history and whether a lie or misrepresentation would
11  disqualify him from performing his job as a truck driver.
12         Defendants also argue that there is no causal connection between their decision
13  to fire Plaintiff and his previous neck injury.  However, Plaintiff provided deposition
14  testimony from his direct supervisor, Rupinski, that Defendants fired Plaintiff for a health
15  issue.  During Rupinski's deposition, an attorney asked him if he knew why Plaintiff was
16  hired. Rupinski responded, "I knew there was an issue going on with the other issue with
17  the health issue or the injury issue, but that's all I can remember as to why he would be
18  fired.  There would be no other reason to fire him." (Ex 3. Rupinski Depo. 13:15-21.)  A
19  supervisor's statement that Defendants fired Plaintiff for a health or injury issue is
20  enough to establish the causal connection requirement especially on a Rule 56 Motion
21  when "all reasonable inferences that may be drawn from the facts placed before the
22  court must be drawn in favor of the opposing party." Anderson, 477 U.S. at 255.
23         Finally, Defendants argue that even if Plaintiff established his prima facie case,
24  they fired Plaintiff because he falsified his application, which is a legitimate non-
25  discriminatory reason.  Plaintiff argues that Defendants' reason is pretext, as he
26  disclosed that he suffered a previous work-related injury. (ECF No. 14-8 at 68, 73.)

---

[6] Neither party identifies Rachelle Paulson, but the Court assumes she is a member of Defendants' occupational health department.

1  Plaintiff also argues that Robin, the case manager that Defendants assigned to him, told
2  him, "I don't know why they fired you because I don't think you lied.  You might have
3  made some mistakes regarding the dates . . . as far as your last injury is concerned, but I
4  don't think you lied."[7]  (Sharifi's Depo. 41:14 to 42:13.)  The Court has reviewed the
5  entire record, and it is unclear whether Defendants' reason is legitimate or pretext; this is
6  a question that the trier of fact must answer.

There are too many genuine issues of material fact as to Plaintiff' physical discrimination claim to reach a decision for either party on a Motion for Summary Judgment.  Accordingly, Plaintiff's entire Motion for Summary Judgment is DENIED (ECF No. 15-2) and Defendants' Motion for Summary Judgment as to Plaintiff's physical discrimination claim is DENIED (ECF No. 14-1).

### B. Plaintiff's Second and Third Claims for Failure to Accommodate and Failure to Engage in the Interactive Process

Section 12940, subdivision (m) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee." Cal. Gov. Code § 12940(m) (West 2012).  An employer is only required to accommodate known disabilities.  Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1252 (2008). The employee bears the burden of informing the employer of his or her disability, but the employee does not have to provide a particular type of notice.  Id.  Section 12940, subdivision (n) makes it an unlawful employment practice "for an employer . . . to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." Cal. Gov. Code, § 12940(n) (West 2012).

Defendants argue that the undisputed facts establish that Plaintiff never requested an accommodation and it was he, not Defendants, who failed to engage in the good faith, interactive process.  (ECF No. 14-1 at 19.)

---

[7] Robin's last name is not included in the evidence either party provided.

In Defendants' moving papers, Defendants cite many cases that hold that employers do not violate section 12940(m) or section 12940(n) when no reasonable accommodation exists. These cases do not apply to the issue at hand. Both parties agree that Defendants fired Plaintiff on or about February 24, 2010, when Plaintiff injured his finger and disclosed the extent of his previous neck injury to Defendants' workers' compensation department. (ECF No. 14-1 at 11-12.) As discussed above, the Court is unable to determine if Plaintiff failed to disclose his previous injury, minimized it, or Defendants misreported it. Based on the evidence, the Court can determine that Plaintiff injured his finger on or about February 15, 2010 and nine days later, Defendants fired him. Plaintiff presented evidence that Defendants perceived him as disabled or potentially disabled. Cal. Gov. Code, § 12926.1 (b) (West 2012); see Vann Depo. 54: 7-19 and Eytchison Depo 30:25 to 31:7). However, neither party presented evidence that Defendants engaged in the good faith, interactive process. Instead, from the evidence provided, it appears that Defendants fired Plaintiff and then investigated him further. The Ninth Circuit has held that an

> employer cannot prevail on summary judgment on claim under [FEHA] alleging failure to reasonably accommodate a disabled employee, unless employer establishes through undisputed facts that reasonable accommodation was offered and refused, that there simply was no vacant position within employer's organization for which disabled employee was qualified and which disabled employee was capable of performing with or without accommodation, or that employer did everything in its power to find a reasonable accommodation, but informal interactive process broke down because employee failed to engage in discussions in good faith.

Dep't of Fair Employment v. Lucent Technologies, Inc., 642 F.3d 728, 744 (9th Cir. 2011). The evidence the Ninth Circuit requires for an employer to prevail on a motion for summary judgment for a failure to reasonably accommodate and failure to engage in the interactive process claim is not present. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment as to Plaintiff's failure to accommodate and failure to engage in the interactive process actions. (ECF No. 14-1.)

### C. Tortious Termination in Violation of Public Policy

A claim for disability discrimination in violation of the FEHA and a claim for tortious termination in violation of the public against discrimination are the same claim. Stevenson v. Sup. Ct., 16 Cal. 4th 880, 904 (1997). Thus, the Court need not re-analyze Plaintiff's claim for physical disability discrimination as it thoroughly discussed it earlier in this Order.

### D. Punitive Damages

In California, a plaintiff can recover punitive damages only if he proffers, by clear and convincing evidence, that the defendant "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a) (West 2012). In addition, punitive damages against a corporate employer are only permitted if the employee is sufficiently high in the corporation's decision-making hierarchy to be an "officer, director or managing agent." Gelfro, 140 Cal. App. 4th 34, 63 (2006) (quoting Cal. Civ. Code § 3294(a), (b)). Managing agents are employees who exercise substantial discretionary authority over decisions that ultimately determine corporate policy. Id.

Defendants contend Plaintiff may not seek punitive damages because there is no evidence in the record of oppression or malice towards the Plaintiff. Whether Defendants' conduct was oppressive or malicious is not an issue of law, but rather an issue of fact inappropriate for disposition on a Motion for Summary Judgment. Accordingly, Defendants' Motion for Summary Judgment as to punitive damages is denied.

///
///
///
///

**CONCLUSION**

Based on the reasons described above, both Defendants' Motion for Summary Judgment (ECF No. 14) and Plaintiff's Motion for Summary Judgment (ECF No. 15) are DENIED.

IT IS SO ORDERED.

DATED: June 19, 2013

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT